

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

FJN:AA
F. #2021R01019

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

April 28, 2023

By ECF and E-mail

The Honorable Diane Gujarati
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

      Re:    United States v. Steven Rodriguez
                Criminal Docket No. 22-70 (DG)

Dear Judge Gujarati:

The government respectfully submits this letter in advance of the defendant Steven Rodriguez's sentencing, which is scheduled for May 12, 2023. On February 16, 2022, the defendant was charged with entering into conspiracies to steal, forge, and distribute genuine Covid-19 Vaccination Cards to unvaccinated persons. On September 21, 2022, pursuant to an agreement with the government, the defendant pleaded guilty to Count One of the Indictment. For the reasons set forth below, the government requests that the Court impose a sentence at the top of the applicable United States Sentencing Guidelines ("U.S.S.G." or "Guidelines") range: 37 months' imprisonment.

I.    Background

The defendant's conduct is outlined in the Probation Department's Presentence Investigation Report, dated February 10, 2023 ("PSR") and the Addendum dated April 14, 2023 ("PSR Addendum").

    A.    The Offense Conduct

The defendant worked as a nurse at a clinic based in Hempstead, New York ("the Healthcare Clinic"). PSR ¶ 13. From at least March 2021 until February 2022, while the Covid-19 pandemic raged, the defendant abused the access provided to him by his profession to steal official Covid-19 Vaccination Cards and then forge, sell, and/or distribute them to unvaccinated persons. His co-conspirators also in turn distributed and sold the cards to other unvaccinated persons. As part of the scheme, the defendant and his co-conspirators offered customers

different options for Covid-19 Vaccination Cards. PSR ¶ 14. Buyers could obtain blank or completed Covid-19 Vaccination Cards. The defendant also abused his access to official government vaccination databases to submit false immunization entries in furtherance of the scheme. Id. Fraudulent submission to the state immunization databases allowed members of the conspiracy to sell, offer and obtain access to an Excelsior Pass,[1] despite being unvaccinated. Id.

To facilitate creating false entries in immunization databases, Rodriguez would direct co-conspirators to make genuine appointments at the Healthcare Clinic to receive a Covid-19 vaccine. When the co-conspirators visited the Healthcare Clinic, the defendant would meet the co-conspirator but did not administer the vaccine. Instead, he would destroy a vial of vaccine intended to be used to vaccinate a patient; provide a forged Covid-19 Vaccination Card that he completed to make it falsely appear that the buyer had received a dose of vaccine that Rodriguez had in fact destroyed; and made entries in the immunization databases falsely indicating that the co-conspirator had been vaccinated. PSR ¶ 14.

The defendant employed multiple means to ensure the scheme was successful. To avoid detection and protect the scheme, Rodriguez referred to Covid-19 Vaccination Cards using code names, such as "gift cards," "Cardi Bs," "Christmas cards" and "Pokemon cards." PSR ¶ 17. And Rodriguez also disguised the source of mail items containing Covid-19 Vaccination Cards by omitting a return address on envelopes. Moreover, as the PSR notes, "[t]he defendant coordinated and organized the scheme." PSR ¶ 15. The defendant sent instructions on how to book vaccine appointments, what to bring, and even where to park. Notably, the defendant gave certain specific instructions—including what to say to clinic staff and how to act when in the clinic—to avoid arousing suspicion. Id. Rodriguez also provided updated lot numbers for new vaccine batches to co-conspirators and created a separate Instagram account just to field vaccine card related requests. PSR ¶ 15. And, to extend the reach of the scheme, the defendant partnered with at least five other co-conspirators who themselves sold forged and/or stolen Covid-19 Vaccination Cards to unvaccinated persons for profit. These conspirators included Jia Liu, who was charged alongside Rodriguez, and four unindicted co-conspirators.

The defendant gave false and fraudulent vaccination records without regard to risk to the community. He provided false records not only to persons who wanted them to attend entertainment venues, but also to persons who needed them to remain working in high-transmission settings, such as teachers, restaurant employees, and other healthcare professionals. PSR ¶ 13; Def. Mem. 13.

In total, the government traced at least $15,000 of the scheme's revenue, which is an undercount given payments in cash and in-person transactions not recorded by messaging applications. The government also found that the defendant prepared at least 190 false entries in state immunization databases and sold at least 300 physical Covid-19 vaccination cards. PSR ¶ 25.

---

[1] In 2021, the State of New York released the Excelsior Pass, which used patient data from government immunization databases to display a user's vaccination status via QR code.

B.        Post-Arrest Interview

The defendant was arrested on February 17, 2022. Thereafter, he was interviewed by agents from the Federal Bureau of Investigation. During the interview, the defendant repeatedly minimized his conduct in demonstrably false ways. He initially told law enforcement that he "flat out ignored" or denied requests for Covid-19 Vaccination Cards, and that "everybody who got vaccinated was truly vaccinated." When asked if he provided anything other than Covid-19 cards, the defendant minimized again—withholding that he provided false records in state immunization databases. Even after being presented with Instagram conversations with another co-conspirator who bought fraudulent cards for resale and who paid the defendant on multiple occasions, the defendant denied actually sending any cards to this co-conspirator. Only when confronted with an audio message from the co-conspirator stating that he received the mailed Covid-19 vaccination cards did the defendant come clean to law enforcement.

C.        The Indictment and Plea

On February 16, 2022, a grand jury returned an indictment charging the defendant with conspiracies to steal, forge, and distribute genuine Covid-19 Vaccination Cards to unvaccinated persons. The indictment specifically charged Rodriguez with a scheme to fraudulently obstruct the U.S. Department of Health and Human Services' administration and distribution of Covid-19 vaccines (Count One); and a scheme to forge government writings (Count Three), each in violation of 18 U.S.C. § 371. On September 21, 2022, the defendant pleaded guilty to Count One of the Indictment.

D.        Victim Notification

On March 8, 2023, the undersigned notified representatives of the U.S. Department of Health and Human Services of their rights as victims. Their contact information was also provided to the Probation Department.

E.        The Defendant's Sentencing Memorandum

The defendant seeks a sentence of time served. Def. Mem. 9. Notwithstanding the Guidelines range of 30 to 37 months, the defendant argues for a significant downward variance because (a) he was a front-line worker during the pandemic, (b) he performs community service, (c) his family, friends and coworkers attest to his good character, (d) he suffers from diabetes and hypertension, and (e) other Covid fraud cases resulted in lenient sentences. The defendant also casts blame at other members of the conspiracy, including his co-defendant. Id. at 12.

II.        Guidelines Calculation

Based on the government's calculation, the total offense level under the Guidelines for the defendant's conduct is 22, and his Criminal History Category is Category I. Subtracting three points for timely acceptance of responsibility, the defendant's adjusted offense level falls to 19. Thus, the applicable Guidelines range is 30 to 37 months' imprisonment.

The PSR omits any role enhancement under U.S.S.G. § 3B1.1. The government incorporates its objection to the PSR as if set forth herein. See ECF Nos. 57, 63. The Probation Department did not add the four-point enhancement largely because it "do[es] not believe that any participants were forced to partake in the scheme" and thus it "do[es] not find that the defendant exercised control over any other participants." PSR Addendum at 3 (emphasis added). The Probation Department makes this decision notwithstanding its finding in the PSR that "[t]he defendant coordinated and organized the scheme." PSR ¶ 15.

The government respectfully disagrees with the Probation Department's analysis under U.S.S.G. § 3B1.1, which would (a) improperly transform an enhancement for leaders, organizers, managers and supervisors into an enhancement for only forced labor, (b) contravene Second Circuit law and the multi-factor analysis called for by U.S.S.G. § 3B1.1, see United States v. Greenfield, 44 F.3d 1141, 1146 (2d Cir. 1995) ("direct and intermediate control over participants … is neither a prerequisite for an enhancement … nor the only factor a court should consider"), (c) ignore the many ways in which the defendant exercised control over the entire scheme and its conspirators by directing the supply of Covid-19 vaccination cards and information, as the PSR itself notes, PSR ¶ 15, and (d) ignore that the defendant conscripted others to carry out tasks.[2] See also Gov. Br. 2-4, ECF No. 57 (discussing other § 3B1.1 factors including the indispensable nature of the defendant's organization and management of the scheme, his recruitment efforts, and his greater than other co-conspirator earnings). The defense does not deny that the conspiracy involved more than five participants or is otherwise extensive.

III.    Legal Standard

In United States v. Booker, the Supreme Court held that the Guidelines are advisory and not mandatory, and the Court made clear that district courts are still "require[d] . . . to consider Guidelines ranges" in determining sentences, but also may tailor the sentence in light of other statutory concerns. 125 S. Ct. 738, 743 (2005); see 18 U.S.C. § 3553(a). Subsequent to Booker, the Second Circuit held that "sentencing judges remain under a duty with respect to the Guidelines ... to 'consider' them, along with the other factors listed in section 3553(a)." United States v. Crosby, 397 F.3d 103, 111 (2d Cir. 2005). Although the Court declined to determine what weight a sentencing judge should normally give to the Guidelines in fashioning a reasonable sentence, the Court cautioned that judges should not "return to the sentencing regime that existed before 1987 and exercise unfettered discretion to select any sentence within the applicable statutory maximum and minimum." Id. at 113.

Later, in Gall v. United States, the Supreme Court clarified the proper procedure and order of consideration for sentencing courts as follows: "[A] district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range. As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark." 552 U.S. 38, 49 (2007) (citation omitted). Next, a sentencing court

---

[2] The government also notes that another Covid-19 vaccination fraud case, United States v. Hammel (cited with approval at Def. Mem. 9 and discussed in greater detail supra p. 7), contained an enhancement under U.S.S.G. § 3B1.1 for the defendant being an organizer, leader, manager or supervisor in the scheme.

4

should "consider all of the § 3553(a) factors to determine whether they support the sentence requested by a party. In so doing, she may not presume that the Guidelines range is reasonable. She must make an individualized assessment based on the facts presented." Id. at 49-50 (citation and footnote omitted).

IV.  The Appropriate Sentence

The government respectfully requests that the Court impose a sentence at the top of the Guidelines range: 37 months.

Title 18, United States Code, Section 3553(a) provides that, in imposing sentence, the Court shall consider, among other factors:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed –
>
>> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>>
>> (B) to afford adequate deterrence to criminal conduct; [and]
>>
>> (C) to protect the public from further crimes of the defendant.

For the following reasons, a top-of-the-Guidelines sentence is appropriate here.

First, the nature and circumstances of the offense militate in favor of a top-of-the-Guidelines sentence. See 18 U.S.C. § 3553(a)(1). As the pandemic raged and hundreds of thousands of people perished, the defendant took an opportunity to exploit the pandemic and enrich himself.[3] He helped others appear as though they had been vaccinated, which his medical training and experience showed would have actual life-threatening implications. Vaccine mandates were imposed, in part, to provide reassurance to those at high-risk: people with preexisting conditions; people who worked in high-transmission workplaces; people with elderly parents in their care; people with young children at home—reassurance that it was safe to resume public life. The defendant allowed hundreds of people, including those in high-risk, high-transmission jobs, to flout such public health measures and fraudulently enter those same spaces. His conduct endangered many lives.

It also cannot be understated that the defendant abused his position as a nurse. His cards were not amateur forgeries. The defendant misappropriated official Covid-19

---

[3] In his sentencing submission, the defendant attempts to downplay his financial earnings. But in conversations with a co-conspirator on October 27, 2021, the defendant discussed taking vacations with "[a]ll expenses paid by covid."

5

Vaccination Cards, used actual lot numbers, and made real immunization database entries. And he was doing so during a pandemic from which people suffered and died in such high numbers that hospitals ran out of beds for non-Covid patients—when New York City was forced to deploy refrigerator trucks as de facto morgues. And to ensure the scheme avoided detection, the defendant destroyed vials of the vaccine—a lifesaving shot in short supply in the United States and across the world.

Second, the defendant's history and character weigh in favor of a Guidelines sentence. The defendant is 29 years old and has no criminal history. Although his childhood was somewhat difficult, all of his needs appeared to have been provided for, and he went on to successfully complete an associate degree in nursing. The government credits the defendant for his academic and personal successes, and the government also credits the defendant for rejoining the workface after his arrest.

The defendant urges a non-incarceration sentence in part because of his asserted service to his family and friends as well as his community service. Def. Mem. 2, 5-7. But prior good works "are not ordinarily relevant in determining whether a sentence should be outside the applicable guideline range." See U.S.S.G. § 5H1.11. In addition, the Second Circuit has "consistently held that ordinary family responsibilities do not warrant [a downward] departure," in part because "innumerable defendants" could demonstrate that caring for their family will be affected by incarceration. See United States v. Johnson, 964 F.2d 124, 128 (2d Cir. 1992) ("Disruption of the defendant's life, and the concomitant difficulties for those who depend on the defendant, are inherent in the punishment of incarceration.").[4] The Guidelines also state that "family … responsibilities are not ordinarily relevant" to determining whether a downward departure is warranted. See U.S.S.G. § 5H1.6. Accordingly, the defendant should not receive a downward departure or variance for his prior good works or assistance to his mother and family.

The defendant also highlights his diabetes and hypertension, for which he takes daily medication. See Def. Mem. 8. While the Court should consider the characteristics of the defendant, see 18 U.S.C. § 3553(a)(1), diabetes is not an "extraordinary physical impairment" that justifies a departure or variance from the Guidelines range. See U.S.S.G. § 5H1.4 ("An extraordinary physical impairment may be a reason to depart downward."); see also United States v. Marsh, No. 10-CR-0480, 2011 WL 5325410, at *59 (E.D.N.Y. Oct. 26, 2011) (imposing sentence of incarceration for investment fraud scheme despite defendant's chronic condition for which he takes daily medication); United States v. Martinez, 207 F.3d 133, 139 (2d Cir. 2000) ("There is no evidence in the record that Martinez's diabetes is of a type that cannot be adequately cared for within the prison system.").

Third, there is an acute need for general deterrence against fraud schemes like the defendant's. The government will never be able to prosecute all the individuals who exploited the pandemic for criminal and financial gain. That is all the more true given the difficulty of detecting and prosecuting covert Covid-19 fraud schemes where there is no centralized database of genuine vaccinations. The Second Circuit has found that "[c]onsiderations of (general)

---

[4] While the law related to "downward departures" largely developed in the pre-Booker era, the logic and reasoning of these decisions applies to a Section 3553(a) analysis as well.

deterrence argue for punishing more heavily those offenses that either are lucrative or are difficult to detect and punish, since both attributes go to increase the expected benefits of a crime and hence the punishment required to deter it." See United States v. Zukerman, 897 F.3d 423, 429 (2d Cir. 2018).  And because "fraud-based crimes are more rational, cool and calculated than sudden crimes of passion or opportunity, these crimes are prime candidates for general deterrence." See United States v. Martin, 455 F.3d 1227, 1240 (11th Cir. 2006).  Those principles militate in favor of a sentence at the top of the Guidelines here.

The defendant appears to argue that general deterrence weighs less because "the pandemic has … subsided." Def. Mem. 9.  But the issue of fraud in healthcare programs persists.  A non-incarceratory sentence, as the defendant requests, would send an unfortunate message that subverting programs meant to protect the public health will be punished with a slap on the wrist.  Through a top-of-the-Guidelines sentence, by contrast, the Court should send a message that the kind of fraud the defendant organized will not be tolerated.

Finally, "the need to avoid unwarranted sentence disparities" also weighs in favor of a top-of-the-Guidelines sentence.  See 18 U.S.C. § 3553(a)(6).  The defendant argues that a significant variance is necessary to avoid disparities, and he cites several other vaccine fraud cases.  See Def. Mem. 9.  But the defendant is not similarly situated to those other defendants.  The defendant first analogizes to the case United States v. Hammel, 3:22-cr-00288-MAS (D.N.J. 2022), calling it "strikingly similar." Def. Mem. 9.  The asserted similarity is erroneous.  The Guidelines range in Hammel was the lowest possible—zero to six months imprisonment—or less than one-third the applicable Guidelines range here.  The same is true for another case the defendant analogizes to: United States v. Bethann Kierczak, No. 21-cr-20644-DML-APP (E.D. Mich. Oct. 6, 2022), ECF No. 33 at 4-5, where the applicable Guidelines range was zero to six months imprisonment.  Not so here, where the defendant faces a range of 30 to 37 months.[5]

---

[5] Other cases cited by the defense are inapposite.  Both United States v. Tammy McDonald, No. 21-cr-00802-TLW (D.S.C. June 1, 2022), ECF No. 41 at 6, and United States v. Powell, No. 3:22-cr-00159-JAM (D. Conn. Oct. 31, 2022), ECF No. 17 at 3-4, involved Guidelines ranges of zero to six months' imprisonment.  And United States v. Hodges, No. 22-po-00001-JLH (D. Del. 2022) was a misdemeanor case.  By contrast, Rodriguez is guilty of a felony.

V.   Conclusion

For the foregoing reasons, the government respectfully requests that the Court impose a sentence at the top of the Guidelines range: 37 months' imprisonment.

Respectfully submitted,

BREON PEACE
United States Attorney

By:   /s/ Adam Amir
Adam Amir
Assistant U.S. Attorney
(718) 254-6116

cc:   Gary Farrell, Esq. (by ECF and E-mail)
Probation Officer Jameka Bing (by E-mail)
Clerk of the Court (DG) (by ECF and E-mail)